UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**04 10854 RCL**

PIOTR ZWIERZYNSKI )
# A 71028837 )
)
Petitioner ) MAGISTRATE JUDGE Collings
)
v. ) Civ. No. _____
)
JOHN D. ASHCROFT, Attorney General; )
BRUCE CHADBOURNE, Interim )
Field Office Director for Detention and )
Removal, Boston Field Office, Bureau of )
Immigration and Customs Enforcement; )
KATHLEEN M. DENNEHY, Acting )
Commissioner, Massachusetts Dep't of )
Correction, and the Bureau of Immigration )
and Customs Enforcement (ICE) )
)
) Petition for a Writ of Habeas
) Corpus under 28 U.S.C. § 2241
Respondents, )
_____)

RECEIPT # 55599
AMOUNT $ 5.00
SUMMONS ISSUED N/A
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. TO.M
DATE 4-29-04

## PETITION FOR A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

Petitioner Mr. Piotr Zwierzynski[1] hereby petitions this Court for a writ of habeas corpus to remedy and enjoin his continued unlawful detention by the Respondents. Petitioner also requests that his voluntary departure be reinstated, so that he may return to Poland to immigrate lawfully to the United States with his American wife as soon as possible, pursuant to his approved Alien Relative Petition (I-130). Without a reinstatement of voluntary departure, petitioner will be barred from returning to the United States for ten years. In support of this petition and complaint for injunctive relief, Petitioner alleges as follows:

---

[1] Petitioner's real name is Piotr Zarazinski, but by mistake, the immigration authorities refer to him as Piotr Zwierzynski on all official documents.

1

## PARTIES

1. Petitioner Piotr Zwierzynski is a native and citizen of Poland. Mr. Zwierzynski is married to a U.S. citizen and his I-130 application has been approved. See Exs. 5, 6. Mr. Zwierzynski was granted voluntary departure on August 28, 1997 and was taken into immigration custody on May 30, 2003. See Ex. 7. Although he has not been convicted of any crimes, he has been detained by the Bureau of Immigration and Customs Enforcement ("ICE")[2] for almost eleven months.

2. Respondent John D. Ashcroft is the Attorney General of the United States and is responsible for the administration of ICE and the implementation and enforcement of the immigration laws. As such, he is the ultimate legal custodian of the Petitioner.

3. Respondent Bruce Chadbourne is the Interim Field Office Director for Detention and Removal, Boston Field Office, Bureau of Immigration and Customs Enforcement, Department of Homeland Security. As such, he is the local ICE official who has immediate custody of the Petitioner.

4. Respondent Kathleen M. Dennehy is the Acting Commissioner of the Massachusetts Department of Correction. Because ICE contracts with state prisons such as Suffolk County House of Corrections in Boston, Massachusetts to house immigration detainees such as the petitioner, she has immediate custody of the petitioner.

5. Respondent Bureau of Immigration and Customs Enforcement is the agency charged with implementing and enforcing the immigration laws.

---

[2] In 2003, the INS ceased to exist and its detention and removal authority was transferred to the Bureau of Immigration and Customs Enforcement (ICE), which is part of the Department of Homeland Security (DHS).

## CUSTODY

6. Petitioner is detained at the Suffolk County House of Corrections in Boston, Massachusetts. ICE has contracted with the Suffolk County Sheriff's Department to house immigration detainees such as Mr. Zwierzynski. Petitioner is under the direct control of Respondents and their agents.

## JURISDICTION

7. This action arises under the Constitution of the United States, the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 1570, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. This Court has jurisdiction under 28 U.S.C. § 2241, art. I § 9, cl. 2 of the United States Constitution ("Suspension Clause"), and 28 U.S.C. § 1331, as the Petitioner is presently in custody under color of the authority of the United States, and such custody is in violation of the Constitution, laws, or treaties of the United States. See Zadvydas v. Davis, 533 U.S. 678, 121 S. Ct. 2491 (2001).

## VENUE

8. Venue lies in the District of Massachusetts because Mr. Zwierzynski is currently detained at Suffolk County House of Corrections at 20 Bradston Street Boston, Massachusetts 02118. Venue in the District of Massachusetts is also proper because Petitioner is in the custody of Respondent Bruce Chadbourne, Interim Field Office Director of this District. 28 U.S.C. § 1391.

## EXHAUSTION OF REMEDIES

9. Petitioner has exhausted his administrative remedies to the extent required by law, and his only remedy is by way of this judicial action. After the Supreme Court decision in Zadvydas, the Department of Justice issued regulations governing the custody of aliens ordered removed. See 8 C.F.R § 241.4. Petitioner was ordered deported on February 8, 1995 and was taken into ICE custody on May 30, 2003. At his "90-day" custody review on August 30, 2003, ICE decided to continue detention. See Ex. 1. At his "6-month"[3] custody review on January 29, 2004, ICE again decided to continue detention. See Ex. 2.

10. Petitioner has taken numerous steps to obtain his release from detention and his removal to Poland, which are detailed below. ICE has never accused or even suggested that petitioner has failed to cooperate with efforts to remove him. To the contrary, petitioner and his wife have been the only force pushing ICE to secure his removal, so that he may be released from custody.

11. No statutory exhaustion requirements apply to Petitioner's claim of unlawful detention.

## STATEMENT OF FACTS

A.   *Background*

12. Petitioner, Piotr Zwierzynski, was born in Poland on June 15, 1957. He entered the United States on a non-immigrant visitor visa with authorization to stay for six months. See Ex. 7. Mr. Zwierzynski overstayed the authorized period. Id. In June

---

[3] This review actually occurred eight months after the petitioner was taken into immigration custody.

4

of 1995, Mr. Zwierzynski met Rosemary Martin, a U.S. citizen. Ms. Martin and Mr. Zwierzynski were married on August 19, 1997. See Ex. 6. Mr. and Mrs. Zarazinska's I-130 application was approved on October 31, 2003. See Ex. 5. Mr. Zwierzynski lived with his wife in Dorchester, Massachusetts for seven years before he was detained by the immigration authorities. See Exs. 1, 7.

13. In May of 1994, Mr. Zwierzynski was arrested and spent six months in jail on charges of gross sexual assault in the State of Maine. However, in November of 1994, Mr. Zwierzynski's case was dismissed due to insufficient evidence.

14. On November 23, 1994 Mr. Zwierzynski was placed in deportation proceedings with an order to appear before the Immigration Judge in Boston, Massachusetts for his unauthorized stay in the United States. As a result of the government mailing the notice to an incorrect address, Mr. Zwierzynski failed to attend his hearing. Consequently, Mr. Zwierzynski was ordered deported *in absentia* on February 18, 1995. See Ex.7. On January 29, 1997, Mr. Zwierzynski was detained pursuant to the February 18, 1995 *in absentia* order. On March 24, 1997, Mr. Zwierzynski filed a motion to reopen, which was granted. Id.

15. After marrying Rosemary Martin, Mr. & Mrs. Zarazinska filed I-130 and 485 adjustment of status forms. On August 28, 1997, Boston Immigration Court granted voluntary departure to Mr. Zwierzynski, with a departure deadline of December 6, 1997. See Ex. 7. Mr. & Mrs. Zarazinska's applications were accepted for adjudication on October 10, 1997, so they requested that Mr. Zwierzynski be able to stay pending the outcome of the application. Their request was denied and he was told to leave by January 8, 1998. Mr. Zwierzynski did not leave and was told to report for removal on July 13,

1998. Mr. Zwierzynski did not report because Ms. Zwierzynski mistakenly believed that because she was appealing the I-130 denials, they would be able to work it out. See Ex. 1. She begged her husband to stay, because she could not bear for him to leave. See Ex. 1.

16. After hiring counsel, the Zwierzynskis filed another I-130, which was approved on October 31, 2003. See Ex. 5. Petitioner also filed a motion to reopen before the Immigration Judge, which was denied on July 11, 2003. See Ex. 7. Petitioner did not appeal the denial of this motion.

17. On May 30, 2003, Mr. Zwierzynski was detained by the Department of Homeland Security. See Ex. 7. Mr. Zwierzynski has been in immigration detention since May 30, 2003 – almost eleven months.

B.   *"90 Day" and Six Month Custody Reviews*

18. ICE sent petitioner a notice that it would review his detention on August 30, 2003. See Ex. 1. To petitioner's knowledge, he was not given written notice of the results of ICE's "90-Day" review; nor was initial notice of review sent to petitioner's counsel of record. See Ex.3. On October 7, 2003, through counsel, petitioner requested review of his detention status under 8 C.F.R. § 241.4 and § 241.13, on the ground that he was not a flight risk or danger to the community. Id. Counsel has since stopped working on the case, so it is unknown whether ICE ever responded to this letter.

19. ICE again reviewed Mr. Zwierzynski's detention on or about January 29, 2004 -- two months after the presumptive six month custody review period. See Ex. 3;

6

see also 8 C.F.R. §241.4. In a letter dated January 29, 2004, ICE explained its decision to continue detention as follows:

> Subsequent to receipt of your final order of removal ICE has been making attempts to repatriate you by requesting the Government of Poland to approve your case for final removals. The Government of Poland regularly approves cases for removal and there is no indication at this time that your case will not be approved.

See Ex.4.

20. It is unclear when or whether Mr. Zwierzynski's case has be transferred to the Headquarter Post Detention Unit (HQPDU) for additional review because of a typographical error in the Decision to Continue Detention written by BICE. See Ex. 4. ("If you have not been released from the United States by Immediately n of the custody decision in your case will be transferred to the headquarters Post Order Unit (HQPDU), 801 I St. NW, Washington, DC 20536.")

C.   *Petitioner's Steadfast Attempts to Effect his Deportation and ICE's Response*

21. Mr. Zwierzynski, through the help of his U.S. citizen wife, has consistently and doggedly tried to expedite his repatriation to Poland and release from custody. Ms. Zarazinska has contacted ICE officials and the Polish Consulate numerous times, as detailed in her Affidavit, attached as Exhibit 1. Numerous times, ICE officials have sought to reassure her that petitioner would be removed soon. Id.

22. For instance, in September of 2003, Ms. Zarazinska called Officer Lou Mahar everyday for a week, until she reached him. Id. Ms. Zarazinska asked Officer Mahar how long Petitioner would have to remain in detention before he could be sent back to Poland. Officer Mahar told her that it would be a couple of weeks, maybe a month. Id.

23. In October of 2003, Ms. Zwierzynski made numerous calls to immigration officials. Id. She spoke with Officers, La Chance, Harrison, Cordenas and Mahar. During each conversation, she asked what was the current status of Mr. Zwierzynski's travel papers and if there was anything she could do to expedite the process. Id. Each officer told Mrs. Zarazinska that they had sent for the travel papers, but had not received them back from the Polish Consulate. Id. They informed her that petitioner could not be released because they believed his travel papers would be coming any day. Id. Ms. Zwierzynski told Officer LaChance that she had called the Polish Consulate in New York and was told that the Consulate had already sent Mr. Zweirzynski's travel documents to ICE. Id. Officer LaChance told Ms. Zweirzynski that ICE had not received Petitioner's travel documents yet. Id.

24. In December of 2003, Mrs. Zarazinska again made numerous calls to immigration. Id. She told Officer Mahar that she had called the Polish Consulate and had been having trouble getting someone who spoke English. Id. Officer Mahar responded by telling her that he was having the same problem and said that he would have one of his men that speaks Polish call. Id. Mrs. Zarazinska has not been able to reach Officer Mahar since this conversation. Id.

25. In the months of January and February of 2004, Mrs. Zarazinska called immigration three times a week- every Monday, Wednesday and Friday- each time speaking with Officer Cordenas. Id. Officer Cordenas told her that he had sent for Mr. Zwierzynski's travel documents in January, but still had not received them. Id.

26. Mrs. Zarazinska currently calls immigration at least three times a week and leaves messages for Officers Mahar and Cordenas. Id. She also calls the Polish

Consulate every Wednesday. Id. Her contact there, Marek, the Consulate General, states that he has sent Petitioner's travel documents to ICE immigration three times already and each time ICE has misplaced them. Id. He told her that he sent the travel documents in July and November of 2003 and in February of 2004. Id.

27. On Tuesday, April 13, 2004, Mrs. Zarazinska spoke with Alan Greenbaum Mr. Zwierzynski's deportation officer. Id. Officer Greenbaum told her that although Mr. Zwierzynski is scheduled to leave April 15, 2004, the Polish Consulate has not sent his travel documents. Id. Officer Greenbaum told her that they have rescheduled for April 22, 2004, provided they have received the travel documents by then. Id.

28. On Wednesday, April 14, 2004, Mrs. Zarazinska called the Polish Consulate and spoke with Marek, the Consulate General. Id. He told her that Immigration had not sent for Mr. Zwierzynski's travel papers, since the last time they did in February of 2004. Mrs. Zarazinska then asked if Marek could forward them directly to ICE. He told her he would. Id.

29. On Friday, April 23, 2004, Mrs. Zarazinska again spoke with Marek at the Polish Consulate. Id. He told her that ICE had sent for Mr. Zwierzynski's travel documents and that she should call him on Wednesday April 28 to find out if ICE had received them or "lost" them again. Ms. Zarazinska called him on April 28 but he had no new information. Id.

30. On Tuesday, April 27, 2004, Mrs. Zarazinska again called Officer Greenbaum. Id. He told her that Mr. Zwierzynski should be leaving the week of May 10, 2004, but also said that they still had not received Mr. Zwierzynski's travel documents.

This suggested departure date will surpass Mr. Zwierzynski's eleventh month in detention. Id.

## LEGAL FRAMEWORK FOR RELIEF SOUGHT

31. In Zadvydas, the Supreme Court held that 8 U.S.C. § 1231(a)(6), when "read in light of the Constitution's demands, limited an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States." Id., 533 U.S. at 689. A "habeas court must [first] ask whether the detention in question exceeds a period reasonably necessary to secure removal." Id. at 701. If the individual's removal is not reasonably foreseeable, "the court should hold continued detention unreasonable and no longer authorized by statue." Id.

32. In determining the length of a reasonably removal period, the Court adopted a "presumptively reasonable period of detention of six months." Id. at 701. After six months, the government bears the burden of disproving an alien's "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." See Zhou v. Farquharson, 2001 U.S. Dist. LEXIS 18239, *2-*3 (D. Mass. Oct. 19, 2001) (quoting and summarizing Zadvydas). Moreover, "[f]or detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink.") Zadvydas, 533 U.S. at 701. ICE's administrative regulations also recognize that the HQPDU has a six-month period for determining whether there is a significant likelihood of an alien's removal in the reasonably foreseeable future. See 8 C.F.R. § 241.4(k)(2)(ii).

33. Evidence showing successful repatriation of other persons to the country at issue is not sufficient to meet the government's burden to establish that an alien petitioner will be deported within the reasonably foreseeable future. See Norlon Thompson v. INS, 2002 U.S. Dist. LEXIS 23936, *15-*17 (E.D. La. September 16, 2002) (government failed to show that alien's deportation to Guyana was reasonably foreseeable where the government offered historical statistics of repatriation to Guyana, but failed to show any response from Guyana on the petitioner's application for travel documents); Kacanic v. Elwood, 2001 U.S. Dist. LEXIS 21848 at *14 (E.D. Penn. November 8, 2002) (government's reliance on data concerning removals of other aliens to Yugoslavia did not satisfy Zadvydas because government failed to give information about the number of aliens that were *denied* travel papers and did not provide individualized information about the removed aliens that would allow "a meaningful comparison" of the removed aliens to the petitioner); Ablahad v. Ashcroft, 2002 U.S. Dist. LEXIS 17405 at *4 (N.D. Ill. September 6, 2002) (evidence that aliens have been deported to petitioner's country is not sufficient to carry the government's burden under Zadvydas). Rather, for the government to meet its burden of showing that an alien's repatriation is reasonably foreseeable, it must provide some meaningful evidence particular to the individual petitioner's case. Compare Thompson, Kacanic, and Ablahad with Khan v. Fasano, 194 F. Supp. 2d 1134 at **2, 4, 9 (S.D. Cal. 2001) (eight month detention following final order was not unreasonable where INS requested travel documents for petitioner, Pakistani Consulate indicated that petitioner's travel document application had been forwarded to the appropriate ministry, meeting was scheduled with Pakistani government

to discuss petitioner's case, and INS had successfully repatriated *476* Pakistani nationals during 2001, suggesting lack of "institutional barriers" to successful repatriation).

34. An alien who has been detained beyond the presumptive six months should be released where the government is unable to present documented confirmation that the foreign government at issue will agree to accept the particular individual in question. See Agbada v. Ashcroft, 2002 U.S. Dist. LEXIS 15797, *2 (D. Mass. August 22, 2002) (court "will likely grant" habeas petition after fourteen months if ICE "is unable to present document confirmation that the Nigerian government has agreed to [petitioner's] repatriation"); Zhou, 2001 U.S. Dist. LEXIS 18239 (ordering that the writ of habeas corpus issue within 60 days, given petitioner's 13-month detention and the INS's inability to assure the court that the paperwork from China was on its way); Abdu v. Ashcroft, 2002 U.S. Dist. LEXIS 19050 at *7 (W.D. Wash. February 28, 2002) (government's failure to offer specific information regarding how or when it expected to obtain the necessary documentation or cooperation from the foreign government indicated that there was no significant likelihood of petitioner's removal in the reasonably foreseeable future).[4]

ARGUMENT

A.   *In Light of Its Broken Promises and More Than 10 Month Delay, ICE Cannot Show that Petitioner's Deportation is "Reasonably Foreseeable"*

35. In the more than ten months that Mr. Zwierzynski has been incarcerated, ICE has not formally given Mr. Zwierzynski any information about his removal other than the

---

[4] See also Kacanic, 2001 U.S. Dist. LEXIS 21848 (where alien had been detained for one year, lack of a definitive answer from foreign embassy as to issuance of travel documents – or any indication that a definitive answer was likely – showed that removal was not reasonably foreseeable); Mohamed v. Ashcroft, 2002 U.S. Dist. LEXIS 16179 at *7 (W.D. Wash. April 15, 2002 (granting writ of habeas where lack of definite answer from the foreign consulate indicated that no removal was likely in the reasonably foreseeable future).

boilerplate language contained in the "Six Month" Custody review letter. See Ex. 4. (stating because the Government of Poland "regularly" approves cases for removal, there is "no indication at this time that his case would not be approved.") ICE has not provided in writing any repatriation information specific to *Mr. Zwierzynski*, such as whether ICE had received any information from Poland regarding the status of Mr. Zwierzynski's travel documents. Given the amount of time petitioner has sat in prison waiting for his travel documents to issue, generalized language as to the alleged success of repatriating *other* Polish nationals is not sufficient to instill confidence that petitioner will in fact be repatriated soon.

36. ICE has never asserted that Petitioner has failed to cooperate in his deportation. Indeed, as noted above, Mr. Zwierzynski has fully cooperated with the authorities to accomplish removal.

37. It is likely that ICE will respond to this petition by once again promising that petitioner's removal will be scheduled within a few weeks. However, as the Supreme Court noted in Zadvydas, ""[f]or detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink.") Zadvydas, 533 U.S. at 701. The amount of time petitioner has spent in detention, coupled with ICE's unfulfilled promises, demonstrate that petitioner's removal is not, in fact, "reasonably foreseeable" and is unlawful. Indeed, according to statements by the Polish Consulate to petitioner's U.S. citizen wife, it has sent petitioner's travel documents three times, and each time ICE has misplaced them. See Ex. 1. These errors – while seemingly mundane – have resulted in grave deprivations of petitioner's human rights and liberty. These factors counsel in favor of granting

petitioner's immediate release from detention and reinstatement of voluntary departure, so that petitioner may return to Poland to immigrate to the United States legally with his U.S. citizen wife.

## CLAIMS FOR RELIEF

### COUNT ONE
### STATUTORY VIOLATION

38. Petitioner re-alleges and incorporates by reference paragraphs 1 through 37 above.

39. Petitioner's continued detention by the Respondents violates INA § 241(a)(6), as interpreted in Zadvydas. Mr. Zwierzynski's six-month presumptively reasonable period for continued removal efforts passed over four months ago. For the reasons outlined above, Petitioner's removal to Poland is not reasonably foreseeable. The Supreme Court held in Zadvydas that the continued detention of someone after six months where deportation is not reasonably foreseeable is unreasonable and in violation of INA § 241.

### COUNT TWO
### SUBSTANTIVE DUE PROCESS VIOLATION

40. Petitioner re-alleges and incorporates by reference paragraphs 1 through 39 above.

41. Mr. Zwierzynski's continued detention violates his right to substantive due process by depriving him of his core liberty interest to be free from bodily restraint. The Due Process Clause requires that the deprivation of Mr. Zwierzynski's liberty be

narrowly tailored to serve a compelling government interest. While the Respondents would have a compelling government interest in detaining Mr. Zwierzynski in order to effect his deportation, that interest does not exist if Mr. Zwierzynski cannot be deported. The Supreme Court in Zadvydas thus interpreted INA § 241 to allow continued detention only for a period reasonably necessary to secure the alien's removal because any other reading would go beyond the government's articulated interest -- to effect the alien's removal.

## COUNT THREE
## PROCEDURAL DUE PROCESS VIOLATION

42. Petitioner re-alleges and incorporates by reference paragraphs 1 through 41 above.

43. Under the Due Process Clause of the United States Constitution, an alien is entitled to a timely and meaningful opportunity to demonstrate that he should not be detained. The Respondents have failed to timely act upon the administrative request for release as called for in 8 C.F.R. §241.13(e)(1). The Petitioner in this case has been denied the opportunity to demonstrate that he should not be detained, as there is no administrative mechanism in place for the Petitioner to demand a decision, ensure that a decision will ever be made, or appeal a custody decision that violates Zadvydas.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

1)  Assume jurisdiction over this matter;

2)     Grant Petitioner a writ of habeas corpus directing the Respondents to immediately release the Petitioner from custody;

3)     Order Respondents to refrain from transferring the Petitioner out of the jurisdiction of the ICE Boston District Director during the pendency of these proceedings and while the Petitioner remains in Respondent's custody;

4)     Grant petitioner reinstatement of voluntary departure; and

5)     Grant petitioner any other and further relief which this Court deems just and proper.

Respectfully submitted this 24 day of April, 2004

Respectfully submitted,

*[signature]*

Piotr Zarazinska, aka Piotr Zwierzynski
*Pro Se*
Prepared with assistance from
Stephanie St. Louis, BC Law Student
working under direct supervision of
Alexandra Dufresne, Detention Attorney,
Boston College Immigration and Asylum Project,
Catholic Legal Immigration Network, Inc.

## CERTIFICATE OF SERVICE

I, Rosemary Zara, hereby certify that I served a true copy of the Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Supporting Exhibits on

Frank Crowley
Special Assistant U.S. Attorney
Department of Homeland Security
PO Box 8728
JFK Station
Boston, MA 02114
(61760 565-2415

by mailing it via U.S. mail on April 29th, 2004.